UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE SOTO PEREZ,<br>Defendant. | Case No. 25-cr-00250-PCP-1 (VKD)<br><br>**DETENTION ORDER** |

The United States moved for detention of defendant Jose Soto Perez. The Court held a hearing on the government's motion on December 12, 2025. Dkt. No. 17. Mr. Perez was present at the hearing and represented by counsel. For the reasons stated on the record during the hearing and as set forth below, the Court finds that there are no conditions, or combination of conditions, of release that would reasonably assure Mr. Perez's appearance for court proceedings. The Court therefore orders Mr. Perez detained pending trial.

## I. BACKGROUND

As set forth in the indictment, the government charges Mr. Perez in count one with violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), distribution of 50 grams or more of methamphetamine; in count two with violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), possession with intent to distribute 50 grams or more of methamphetamine; and in count three with violation of 18 U.S.C. § 922(g)(5), illegal alien in possession of firearms. Dkt. No. 1. Mr. Perez is presumed innocent of these charges. *See* 18 U.S.C. § 3142(j).

Pretrial Services prepared a report, which was shared with the Court and counsel for the parties. The Court adopts the facts set forth in the Pretrial Services report, as indicated below,

1  except for the case agent comments reported at page 6 regarding the existence of an active
2  warrant, which appears to no longer be accurate.  Both parties presented arguments and evidence
3  by proffer through counsel at the hearing, which was conducted in public.

## II. LEGAL STANDARDS

On a motion for pretrial detention, the government bears the burden to show by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of other persons or the community.  18 U.S.C. § 3142(f)(2).  Conversely, the government bears the burden to show by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance.  *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

In evaluating whether pretrial release is appropriate, the Court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

## III. DISCUSSION

### A. Rebuttable Presumption

Given the charges in the indictment, there is a rebuttable presumption of detention based on danger and risk of flight.  18 U.S.C. § 3142(e)(3)(A).  This presumption weighs against release.  However, the Court finds that Mr. Perez has offered evidence to rebut the presumption, and therefore considers the remaining factors that bear on pretrial detention, together with the presumption. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).") (internal quotations omitted).

### B. Nature and Circumstances of the Offenses

According to the indictment and the government's proffer during the hearing, Mr. Perez sold methamphetamine to an undercover officer in September 2024. In October 2024, he traveled to Los Angeles where he obtained three pounds of methamphetamine from a drug supplier, for sale in northern California. Dkt. No. 16 at 2-3. While traveling from Los Angeles back to northern California, Mr. Perez's car broke down. *Id.* at 3. With the assistance of his brother, Mr. Perez loaded his car onto a trailer hitched to a pickup truck and resumed traveling, now driving the pickup truck. *Id.* When local law enforcement officers stopped the truck, Mr. Perez provided fake identification to the officers. *Id.* During the stop, law enforcement discovered a hidden compartment in the car which contained methamphetamine. *Id.* Mr. Perez attempted to flee from the officers by running across all northbound lanes of Highway 101. *Id.* He was arrested.

Later that same morning, a search warrant executed on a property in Salinas, California associated with Mr. Perez as well as other people uncovered large quantities of drugs, eight firearms and associated ammunition, as well as a stolen vehicle. *Id.* at 4.

If convicted, Mr. Perez faces a mandatory minimum prison term of 10 years and a maximum prison term of life for the offenses charged in counts one and two, and a maximum prison term of 15 years for the offense charged in count three.

### C. Weight of the Evidence

The weight of the evidence is difficult to assess at this stage of the case. The government proffers that Mr. Perez made several damaging admissions during his post-arrest interview with local law enforcement and a federal agent. *Id.* at 4. Mr. Perez, who spoke only in Spanish during the interview, contests the government's description of his statements and their significance. In any event, the Court observes that the weight of the evidence is the least important consideration. *Motamedi*, 767 F.2d at 1408.

### D. Personal Characteristics of the Defendant

Mr. Perez is 47 years old. He has lived in California for most of the past 27 years, residing with his wife and her children in Madera, California for the past 6 years. Mr. Perez has many family members who reside in Mexico, and other family members who reside in California. He

1  completed the 11th grade in Mexico. At the time of his arrest, Mr. Perez was self-employed as a
2  mechanic, although the government proffers that Mr. Perez admitted he made most of his money
3  during the "COVID years" by selling illegal drugs. Dkt. No. 16 at 5.

4      Mr. Perez has no history of substance abuse, and no physical or mental health issues.

5      Mr. Perez has a criminal history that dates back 20 years, but most or all of the offenses for
6  which convictions are noted are non-violent misdemeanors or infractions. His criminal history
7  report reflects an active case or cases involving numerous offenses, including domestic violence,
8  based on one incident that occurred in 2015 and another in 2024, but the disposition of these
9  matters is unclear. Defense counsel advised the Court that, contrary to the information reported by
10 the case agent, there are no active warrants for Mr. Perez's arrest. Mr. Perez has a lengthy record
11 of immigration offenses and has been the subject of multiple removal orders. The government
12 contends that he does not currently have legal status in the United States.

13     **E.**    **Nature and Seriousness of the Danger to Others Posed by Defendant's Release**

14     In addition to the conduct charged in the indictment, the government relies on evidence of
15 Mr. Perez's criminal history, as described above, and the circumstances of his arrest in October
16 2024 in which he attempted to flee from law enforcement. While the Court does not give
17 substantial weight to conduct for which Mr. Perez was arrested but not convicted, Mr. Perez's
18 criminal history does include conduct that poses a danger to others and the community. However,
19 most of the conduct in question is alleged to have occurred more than 10 years ago, and it is not
20 clear from Mr. Perez's criminal history report whether more recent conduct involved violence
21 against others. As the government notes, multiple firearms and associated ammunition were found
22 in and around property associated with Mr. Perez during the search following his arrest in October
23 2024.

24     Mr. Perez argues that he did not and does not reside at the property where drugs and
25 weapons were found in 2024, but he acknowledges that his mechanic workshop was located there.
26 He has spent more than a year in custody in connection with his arrest by local law enforcement
27 and plans to reside with his family at his long-time residence in Madera, California if released.
28

### F. Consideration of Conditions of Release

The Bail Reform Act of 1984 favors pretrial release, not detention. Accordingly, the Court has carefully considered whether there are any conditions of release that will reasonably assure the safety of others and the community and Mr. Perez's appearance as required. In particular, the Court has considered whether the availability of a co-signer for an unsecured bond, together with other conditions of release proposed by Pretrial Services and by Mr. Perez, are sufficient.

The Court concludes that the proposed conditions would reasonably assure the safety of others and the community, given the nature and circumstances of the charged offenses and Mr. Perez's criminal history, described above. Moreover, the Court notes that, if released, Mr. Perez would reside in Madera, California with family, away from the location where the conduct charged in the indictment occurred.

However, the proposed conditions would not reasonably assure Mr. Perez's appearance for Court as required. The government has shown by a preponderance of the evidence that Mr. Perez has been the subject of immigration removal orders with which he has not complied, that he has substantial ties to Mexico, and that he attempted to flee when arrested in October 2024. In addition, he faces a lengthy prison sentence if convicted. These circumstances support a finding of a substantial risk of flight. Mr. Perez proposes several conditions of release to address this risk, including supervision by Pretrial Services and restrictions on his ability to change residence or travel, as well as an unsecured bond in the amount of $25,000, co-signed by his stepson, Carlos Chavez. Mr. Chavez appeared at Mr. Perez's detention hearing and was questioned by the Court. He is a young man, of very modest income, who has known Mr. Perez for about 10 years and resides in the same home with him. While the Court does not doubt Mr. Chavez's sincerity and commends his willingness to co-sign a bond, the Court is not persuaded that Mr. Chavez, given his very modest income, youth, and relationship to Mr. Perez, is in a position to exercise influence or moral suasion over Mr. Perez. Uncertainty regarding the availability of location monitoring in the Eastern District of California, where Mr. Perez proposes to reside, also makes it difficult for the Court to determine at this time whether more restrictive location monitoring conditions might be imposed to further address the risk of nonappearance.

## IV. CONCLUSION

Accordingly, defendant Jose Soto Perez is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Mr. Perez shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on the request of an attorney for the government, the person in charge of the corrections facility shall deliver Mr. Perez to the United States Marshal for the purpose of appearances in connection with court proceedings.

**IT IS SO ORDERED.**

Dated: December 15, 2025

Virginia K. DeMarchi
United States Magistrate Judge